## Case No. 16,479.

### UNITED STATES v. THOMASSON.

[4 Biss. 336.] [1]

District Court, D. Indiana. May, 1869.

INTERNAL REVENUE — PENALTIES — PARDON — INFORMER'S MOIETY—STAY OF PROCESS.

1. Judgment for a penalty under the revenue laws was rendered against T.; at the same time it was adjudged that B. was entitled to a moiety of the judgment as the first informer. Afterward the president, by a pardon, remitted the whole penalty. Held. that the pardon operated to remit the moiety adjudged to the informer. as well as to discharge the portion coming to the United States.

2. If the pardon is issued after judgment for the penalty, the court may order a stay of proceedings and process.

Hanna & Knefler. for the informer.
Hendricks & McDonald, for defendant.

McDONALD. District Judge. This was an action of debt to recover penalties incurred under the internal revenue law of June 30, 1864. The 41st section of that act gave a moiety of the penalties to informers. 13 Stat. 239. Charles G. Berry was the informer in this case. At the May term, 1866. of this court, a judgment was rendered against the defendant for penalties amounting in the aggregate to fifteen thousand dollars,—one-half to the use of Berry, whom the court then ascertained and adjudged to be the first informer. [See Case No. 16,478.]

On the 19th of June, 1868, John D. Thomasson, one of the defendants. filed in this court a petition. setting forth the proceedings aforesaid. and stating that before any part of said judgment was paid, namely on the 2nd of April, 1867, the president of the United States, in due form, under his signature and the seal of the government, executed to said Thomasson a full and unconditional pardon of said penalties and judgment. The petition makes profer of the pardon; and it prays that, because an execution on the judgment is threatened by the

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

informer, this court may order a perpetual stay of any execution or other process on the judgment. A demurrer has been filed to the petition; and the parties agree that, in deciding the demurrer, the complete record shall be regarded as before the court.

It is not disputed that the pardon, as pleaded, is a valid remission of all the interest of the United States in the judgment in question. But it is contended on the part of the informer that the pardon cannot affect his right to a moiety of the judgment. And it is agreed on all sides that the only question to be decided on the demurrer is, whether, after the rendition of the judgment, and after the court had adjudged a moiety thereof to the informer, the president could constitutionally by his pardon defeat the informer's right to that moiety.

The national constitution declares that the president "shall have power to grant reprieves and pardons for offenses against the United States, except in cases of impeachment." The exception in this provision, according to a well-established maxim of law, strengthens its application to all offenses not excepted; so that we can certainly say that there can be no offense against the United States, except cases of impeachment, over which the president has not an absolute pardoning power. The only difficulty, therefore, in construing this constitutional provision, is as to what are to be deemed "offenses against the United States" within its meaning. On first view, it might seem that these "offenses" only include crimes and misdemeanors. But it is well settled that the term includes much more. According to Judge Story, "the power of pardon is general and unqualified, reaching from the highest to the lowest offenses. The power of remission of fines, penalties, forfeitures, is also included in it." "Instances of the exercise of this power by the president, in remitting fines and penalties, have repeatedly occurred, and their obligatory force has never been questioned." Story, Const. § 1504, and note 4.

According to this well-settled doctrine, it seems to be certain that the constitution of the United States absolutely impowers the president to remit the whole of the penalties in the present case, and all other penalties incurred for offenses against the United States. Of this it appears to me there cannot be a doubt. If, then, the president is clothed with this indisputable power by the constitution, can congress constitutionally, by any provision in acts providing for the infliction of penalties for offenses against the United States, in any respect or degree, limit or modify the constitutional power thus conferred on the president? To put the same question in another form, has congress the power to alter, limit, or modify any authority positively and unconditionally bestowed on any officer of the national government by the constitution? It appears to me clear

beyond all doubt that congress has no such power; and that any act of congress assuming such power would be manifestly unconstitutional and void. A high authority has declared that "no law can abridge the constitutional powers of the executive department, or interrupt its right to interpose by pardon in such cases." Story, Const. § 1504. No lawyer would venture to assert that congress could constitutionally limit the president's exercise of the pardoning power within a specified period of time, or to persons resident within the United States. Congress alone can annex penalties, fines, and forfeitures to "offenses against the United States," and may doubtless provide that any designated part, or the whole of such penalties, fines, or forfeitures shall go to common informers. But having done so, the national legislature is, as to these matters, functus officio. And it has no power to say that as soon as his share has been adjudged to the common informer, that portion of the penalty, fine, or forfeiture is by legislation carried beyond the scope of the pardoning power. If such a thing can be constitutionally done, congress might by evasive acts practically deprive the president of his whole pardoning power relating to fines, penalties, and forfeitures. Suppose, for example, that congress should by act provide that in all cases of fines, penalties, and forfeitures incurred for crimes, misdemeanors and all other offenses against the United States, prosecuted either by indictment or penal action, the whole of the fine, penalty, or forfeiture shall go to the first informer, and shall, on the day on which he gives the information, become a vested right in him, so that the president shall cease therefrom to have the power to pardon the same. Under such circumstances, would any jurist hold that the president could not pardon the offense after the information had been given? And yet it would seem very clear that if congress has no power to pass a general law of this kind extending to all cases, there is no power to pass a law limiting its operations to special cases. Indeed, the claim of the informer in the case at bar must proceed on a construction of the act under which the present case was prosecuted, which prohibits a presidential pardon of the claimant's moiety after it has been adjudged to him. The act might admit this construction, were it not for the constitutional provision touching pardons. But it seems to me that such a construction would make the act unconstitutional, and is therefore inadmissible. Without great violence to the words of the act, it is capable of two constructions. One is that congress intended so to vest the right to the penalties in the informer by virtue of the judgment of the court in his favor as to destroy the presidential power of pardoning the offense. And this I understand to be the construction insisted on by the informer. The other construction of the act is that congress meant

to give a moiety of the penalty to the informer subject to the contingency of a presidential pardon, and that the informer was not absolutely vested with the right to the moiety by virtue of the judgment in his favor, but only on the condition that the informer should have a right to the moiety if the president should never pardon the offense. In my opinion, this last construction is as fair and reasonable as the first, even if it was not required by the constitution. Besides, it is a well-settled American rule of construing statutes, that when a statute is capable of two constructions, one of which would render it unconstitutional and the other of which is consistent with the constitution, the latter construction shall be preferred. This rule is only an illustration of a more general rule, that in all cases of writings, whether contracts or statutes, the interpretation must if possible be so made ut res magis valeat, quam pereat. This rule is, I think, eminently applicable to the statute under consideration. If we construe it as intending absolutely to vest in the informer a moiety of the penalty by virtue of the judgment in his favor so as to destroy the power of the president to remit the whole penalty, we must necessarily hold the act unconstitutional. For we have seen that no act of congress can limit, modify, or restrain the president's constitutional pardoning power. But if, on the other hand, we construe the act as only vesting a contingent interest in the informer, subject to be defeated by the president's pardon, we both sustain the validity of the statute and avoid a violation of the constitution. I hold therefore that the latter construction is by far the preferable one.

I believe the question under consideration has never been decided by the supreme court of the United States. In the case Ex parte Garland, 4 Wall. [71 U. S.] 333, the question, however, was alluded to; but it was not involved in the controversy. The point decided in that case related to the right of Garland to practice law in certain courts. And the learned judge who delivered the opinion of the court had occasion to inquire how far a presidential pardon had restored Mr Garland to that right; and he said that in general the pardoning power of the president is unlimited, and then added: "There is only this limitation to its operation,—it does not restore offices forfeited, or property or interest vested in others in consequence of the conviction and judgment." [Ex parte Garland] 4 Wall. [71 U. S.] 381. This remark is a mere dictum of the judge, entitled, indeed, to our respectful consideration, but certainly not binding on any of the national courts. If, by the phrase "property or interest vested in others," the learned judge meant property or interest absolutely and unconditionally vested, I should think he was right, if indeed there could be such a case connected with

the question of the pardoning power; and I rather suppose it is just what he did mean. But if he meant to say, as is urged by the informer in the case at bar, that a judgment ascertaining the first informer in a penal action, and awarding to him a moiety of the penalty, takes that moiety out of the operation of the pardoning power, I must dissent from that view. For it is but saying that congress, by giving to an informer a part of a penalty incurred by an offense against the United States, can limit and even defeat, pro tanto, the pardoning power conferred on the president by the constitution. It is observable that in support of this dictum, the learned judge cites only some old English text-books, as Blackstone, Bacon, and Hawkins. On examining these authorities, I find they only maintain this doctrine, that the king cannot pardon "where private justice is principally concerned in the prosecution," nor in case of "offense against a popular or penal statute after information brought." 4 Black. 398, 399. Now it is certain that the case at bar is not one "where private justice is principally," or even at all, concerned. It is a prosecution for a violation of the internal revenue law. Nor is the act on which this suit is brought a "popular statute" in any sense in which the authorities cited employ that phrase. The English popular statutes were acts which provided penalties or forfeitures for certain offenses and provided that a part thereof should be to the use of any one who would prosecute the offender. The right to prosecute was given to everybody—to all the people—and hence these acts were called popular statutes. The informer carried on and controlled the prosecution. It was prosecuted in his own name. He was the only plaintiff. The declaration ran thus: "John Smith, plaintiff, who sues as well for our sovereign lord the king, as for himself in this behalf, complains," &c. 2 Chit. Pl. 13. The informer was liable for costs; but the king was not liable. In such a case, it was reasonable that after the informer had incurred liabilities and made himself responsible for costs, the king should not be permitted to remit the penalty sued for.

On the contrary, prosecutions for fines, penalties, and forfeitures under our internal revenue laws, are not "popular actions" in the English sense of that phrase. In the case at bar, and in like cases, the penalty must "be sued for and recovered in the name of the United States." 13 Stat. 239. The informer is not a party to the action. The government is the only plaintiff. The informer need not even be named in the declaration. And the whole thing is most unlike the popular actions mentioned in the English books. The fact, therefore, that the king could not remit the informer's share after a popular action was brought throws no light on the president's pardon-

ing power. The king's power arose from usage. It was not conferred by any written constitution, or supported by any act of parliament. Courts in construing the constitution, have frequently resorted to English common law Thus, the terms ex post facto law, habeas corpus, and the like, found in the constitution, are old technical terms of the English law; and we may very properly resort to that law for their meaning in defining the same terms as they occur in the constitution. But we have no occasion to resort to England to define the pardoning power vested in the president. The constitution defines it, and declares its meaning and extent. It extends it to all offenses against the United States, except in cases of impeachment. The power of the British sovereign to pardon offenses furnishes us no guide in determining the extent of the pardoning power of the president. In judging the former, we look to that ideal thing called the "British Constitution"; in judging of the latter we consult our national constitution. Nor are the powers of the two on this subject identical. The president cannot pardon impeachable offenses; the king can. According to 4 Black. 398, the king cannot pardon a common nuisance while it remains unredressed; but the president undoubtedly can whenever it is an offense against the United States.

We shall notice this matter further when we come to examine a late decision made by the judge of the district of Kentucky, which seems to be wholly based on the English limitation of the king's pardoning prerogative. It is very certain that the supreme court of the United States does not regard the case Ex parte Garland, supra, as settling the question now under consideration. For, in the later case of Armstrong's Foundry, 6 Wall. [73 U. S.] 766, the question was before that court, and was left undecided. And the chief justice said: "We think it unnecessary to express an opinion at present in relation to the rights of the informer."

It has been urged in favor of the informer that his is a vested right; and that, therefore, the president could not remit the moiety in question. But this is begging the question. For if the power of the president to remit the whole penalty remained after the judgment was rendered, the informer had not a vested right, but only a right contingent on the exercise of the pardoning power.

I find but one decision in the national courts directly bearing on the question under consideration. I allude to a decision made by Hon. B. Ballard of the Kentucky district. It was the case of U. S. v. Harris [Case No. 15,312], and it decides that "the federal executive has no constitutional authority to remit moieties adjudged to informers under the internal revenue act of June 30, 1864." I have a very high opinion of the legal learning of Judge Ballard; and it is painful to be forced to differ on a con-

stitutional question from a gentleman of so exalted a judicial reputation. The opinion, too, is very handsomely expressed, and sustained by a course of most ingenious reasoning. But it is wholly based on the English doctrine touching the king's pardoning power; and it must be confessed that the learned judge has numerous and high authorities for construing the pardoning power of the president by the pardoning power of the British sovereign. Nor do I perceive that the learned judge claims that, aside from British precedents, our national constitution sets any other limitation to the president's pardoning power than the exception touching impeachments. His argument does not deny that the language of the constitution is wide enough to comprehend moieties of penalties adjudged to informers; but he insists that it must not be construed to comprehend them, because the British king had no such power. With all deference, this seems to me to be a non sequitur. I repeat that in cases of technical terms, occurring in the constitution and borrowed from English law,—such as bills of attainder, habeas corpus, ex post facto law, corruption of blood, impeachment and the like,—it is very proper in defining them to look to the sense in which the English lawyers used them before the constitution was adopted. But the present is not such a case. Here, indeed, the technical word, "pardon," is employed. But we have no dispute about the meaning of that word. The dispute is whether the president may remit the whole penalty incurred "for an offense against the United States," after half of it has, under an act of congress, been adjudged to an informer. And this question does not depend on the construction of any technical terms, but on the construction of the language of the constitution, which declares that the president "shall have power to grant reprieves and pardons for offenses against the United States, except in cases of impeachment." Here, the constitution plainly declares, defines and limits the power. In its very terms it extends to all offenses against the United States—whether informers become interested in penalties incurred by these offenses or not—except only in cases of impeachment. And I repeat that the naming of this exception strengthens the application of the power to every case not excepted, on the rule that "enumeration weakens the application to things not enumerated, and exception strengthens the application to things not excepted."

I maintain, therefore, that in defining the extent of the president's pardoning power, we must look to the language of the constitution, and not to the language of the British jurist touching the pardoning power of the king. The constitution provides that "congress shall have power to lay and collect taxes." In order to judge of the extent of that power, would anybody institute

an inquiry into the power of the British parliament on the subject of levying and collecting taxes? Yet such an inquiry would be just as reasonable as to inquire into the king's pardoning power in order to judge of the extent of that of the president. I think that the pardon in question is operative as to the entire penalty; and therefore I overrule the demurrer.